UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ROBERT
OPPERMAN,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

Case No. 2:14-cv-13145
Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10) and GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, David Robert Opperman, brings this action under 42 U.S.C. §§

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 10), the

Commissioner's cross motion for summary judgment (DE 13) and the administrative record (DE 7).

### A.    Background

Plaintiff filed his application for disability insurance benefits (DIB) during June 2011, alleging that he has been disabled since December 5, 2005, at age 41. R 80-86.  Plaintiff alleges disability as a result of:  three right knee replacements, surgeries, back pain; leg pain; depression; anxiety; fatigue and arthritis.  R. at 89-101.  Plaintiff's application was denied initially on October 13, 2011.  R. at 61, 62-66.

On December 3, 2011, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R. at 69-70.  ALJ Brenton L. Rogozen held a hearing on February 13, 2013, at which Plaintiff, his counsel and vocational expert, Ms. Gasgo, appeared.  R. at 27-60; *see also* R. at 7-8.  On March 14, 2013, the ALJ Rogozen issued an unfavorable decision, concluding that Plaintiff had not been under a disability within the meaning of the Social Security Act since the alleged onset date of December 5, 2005, through the date last insured of March 31, 2011. R. at 9-26.

On May 2, 2013, Plaintiff requested review of the decision.  R. at 7-8.  On June 25, 2014, the Appeals Council denied Plaintiff's request for review.  R. at 1-6. Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on August 14, 2014.  DE
1.

**B.     Plaintiff's Medical History**

Plaintiff alleges that he has been disabled since December 5, 2005.  R. at 80.

Plaintiff's medical records span the period from January 9, 2006 to October 13,

2011.  R. at 162-595 (Exhibits 1F-12F).  Among those the ALJ reviewed and cited

are:

- *April 4, 2006 operative report of T.J. Cherwin, D.O. (R. at 173-174)*
- January 11, 2007 examination under fluoroscopy of the right knee (R. at 178)
- March 15, 2007 radiology consultation (R. at 187-188)
- *March 15, 2007 operative report of Dr. Cherwin (R. at 191)*
- January 2, 2008 four views of right knee (R. at 252)
- January 2, 2008 notes of John David Blaha, M.D. (R. at 299-300)
- July 28, 2008 letter of Laurie Astrowski, P.T. (R. at 238)
- September 24, 2008 four views of right knee (R. at 266)
- March 17, 2009 four views of right knee (R. at 262)
- January 12, 2010 MRI of lumbar spine (R. at 267-268)
- February 2, 2010 notes of Dr. Blaha (R. at 275-276)
- March 25, 2010 notes of Daniel Leung, D.O. (R. at 270-271)
- May 3, 2010 physical therapy report (R. at 321-326)
- October 19, 2010 notes of Sridhar Rao, M.D. (R. at 352)
- July 13, 2011 notes of Dr. Rao and Kathy Pittenger (R. at 341-342)
- October 12, 2011 assessment of Natalie Gray, M.D. (R. at 361-363)

R. at 19-21.  In addition, the Undersigned acknowledges that the May 21, 2008 notes of Dr. Blaha reflect a *November 29, 2007 "revision right total knee arthroplasty."*  R. at 295.[1]

### C.    Hearing Testimony (February 13, 2013)

#### 1.    Plaintiff's Testimony

Plaintiff testified at the hearing in response to questioning by the ALJ and his attorney.  R. at 31-52.  Plaintiff testified that he went up to but did not finish the twelfth grade.  R. at 32.  He last worked in December 2005 as a union labor foreman.  R. at 33.

He has had three knee replacements.  R. at 33.  The first took place on April 4, 2006, but it did not work.  R. at 35.  The second took place on March 15, 2007, but he still had pain.  The third took place on November 29, 2007; however, now his knee pops.  R. at 36.  Plaintiff testified that, "the pain from my knee rolls up the back of my leg up to my butt and into my back."  R. at 37.   He is not walking correctly, and his back hurts all of the time.  R. at 37.  It feels as if his leg is "shaky."  Each time he walks, you can hear his leg "clunk."  R. at 47.  At this point, Plaintiff is "just holding off until they find a different – maybe a different procedure they can do."  R. at 38.

---

[1] The italicized records concern Plaintiff's first, second and third knee replacement surgeries.  *See* DE 10 at 17-19.

Plaintiff's wife drove him the hour and 45 minutes to the hearing.  R. at 31-32.  It was too far for him to drive, and he has to get out and stretch.  R. at 32.  Plaintiff sits leaning to the left in order to lessen the Charlie horse-like pain in his right buttocks.  R. at 40.  A cane helps to keep his back straighter and stabilize his body when he walks.  R. at 50.

He can go to Walmart with his wife, but he will be in pain by the time he gets home and will probably be in a little bit more pain the following day.  R. at 41.  He lays down as many as two to three times per day.  R. at 42.  He cannot sit in a chair for very long and has to keep moving around.  R. at 44.  Plaintiff also testified that he did not sleep well the night before the hearing, having slept on the couch because he did not want to bother his wife.  If he stands to wash dishes for 30 minutes, he has to go lay down.  R. at 46.  Plaintiff watches television.  He tries to vacuum and take care of the house.  R. at 48.  He has a pontoon boat, and he will swim.  R. at 48-49.

Plaintiff takes Vicodin for pain, Valium for muscle relaxation and anxiety, and Zoloft for a little depression and anxiety.  R. at 42.

### 2.    Vocational Expert Testimony

The ALJ posed the hypothetical of a person similar to Plaintiff who is limited to unskilled work, no lifting greater than 20 pounds occasionally and 10 pounds frequently, and could be performed either sitting or standing at any point

during the day.  Ms. Gasco, the vocational expert (VE), testified that such a person

could perform some jobs at the light range of exertion, including construction site

flagger, router, and inspector.  R. at 53-56.

The VE then testified that missing more than 2 days of work per month

would result in job loss; however, when asked whether some employers would not

accept that level of time, the VE stated, "[i]t might vary."  R. at 56-58.  Moreover,

the VE testified that if, *in addition* to taking regular breaks, a person needed to take

breaks totaling up to an hour in order to be able to lie down, or if a person is off

task more than 10 percent of the work day, an employer would not keep such a

person employed.  R. at 56-57.

### D.   The Administrative Decision[2]

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet
or equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the
claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and
residual functional capacity, can the claimant perform other work available in the
national economy?

ALJ Rogozen rendered his decision on March 14, 2013. R. at 9-26.
At Step 1, he concluded that Plaintiff did not engage in substantial gainful activity
from December 5, 2005, his alleged onset date, through March 31, 2011, his date
last insured. R. at 14.

At Step 2, the ALJ found that, through the date last insured, Plaintiff had the
severe impairments of degenerative joint disease of the right knee and disorders of
the back. R. at 14-16.

At Step 3, the ALJ found that, through the date last insured, Plaintiff did not
have an impairment or combination of impairments that met or medially equaled
the severity of one of the listed impairments. R. at 16.

At Step 4, the ALJ found that Plaintiff had the residual functional capacity
(RFC) to perform light work, specifically: Plaintiff can occasionally lift and carry
20 pounds and frequently lift and carry 10 pounds; he needs a job that
accommodate[s] [a] sit or stand option at any point throughout the workday; and he
is limited to an unskilled job. R. at 16-21. Moreover, the ALJ concluded that
Plaintiff was unable to perform any past relevant work. R. at 21-22.

Finally, at Step 5, the ALJ found that through the date last insured,
considering Plaintiff's age, education, work experience, and RFC, there were jobs

---

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

that existed in significant numbers in the national economy that Plaintiff could have performed.  R. at 22-23.

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.    Analysis**

In his motion for summary judgment, Plaintiff generally argues that the record evidence does not support the ALJ's finding that Plaintiff had the RFC to perform light work.  DE 10 at 10.  Specifically, Plaintiff contends that the ALJ did not properly assess Plaintiff's complaints of pain, limitations and credibility.  DE 10 at 17-31.  Also, Plaintiff contends that the ALJ did not pose complete and accurate hypothetical questions to the VE.  DE 10 at 31-33.

The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports both the ALJ's RFC finding and Step 5 finding.  DE 13 at 7-19, 19-21.

The Undersigned will address each of the salient points in these arguments in turn.

### 1.     Whether substantial evidence supports the ALJ's RFC finding?

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of*

*Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98

F.3d 966, 970 (7th Cir. 1996)).

> Pursuant to Social Security Rule 96-8p, the RFC assessment must include:
>
> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7.

### a.   **Opinion evidence**

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case.  20 C.F.R. § 416.927(d).  The regulations define

medical opinions as "statements from physicians . . . that reflect judgments about

the nature and severity of your impairment(s), including your symptoms, diagnosis

and prognosis, what you can still do despite impairment(s), and your physical or

mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are

not bound by any findings made by State agency medical or psychological

consultants, or other program physicians or psychologists."  20 CFR §

404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[3]  *Wilson v. Comm'r*

---

[3] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice

of determination or decision for the weight [the ALJ] give[s] your treating source's

opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7

(6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals

for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### i.     Dr. Gray (State Agency Consultant)

As noted above, the ALJ found Plaintiff's RFC to include light work, with occasional lifting and carrying of 20 pounds and frequently lifting and carrying of 10 pounds, with a sit or stand option at any point throughout the work day, and limited to an unskilled job.  R. at 16.  In arriving at this finding, the ALJ gave great weight to the opinions of state agency consultant, Natalie Gray, M.D.  R. at 21, 361-363.  Specifically, Dr. Gray assessed Plaintiff's physical RFC, noting that his exertional limitations included occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking for a total of 4 hours, sitting for a total of approximately 6 hours in an 8-hour workday and that a cane was not medically necessary but may be used as needed for pain.  R. at 362.  Dr. Gray also listed several postural limitations.  R. at 362-363.  After citing Dr. Gray's opinion, the ALJ "added additional limitations of having [a] sit or stand option in an eight-hour workday and limited to unskilled work to accommodate the claimant's subjective complaints."  R. at 21.

Plaintiff claims the ALJ erred in attributing great weight to Dr. Gray's opinion, noting that her conclusions (R. at 362) were not consistent with light work but, rather, demonstrate a capacity for sedentary work.   DE 10 at 18, 21-22, 34.[4] In support of this statement, Plaintiff cites, in part, the "Assessment of Vocational Factors," which appears to have been offered by Christina Clark on October 13, 2011 and lists Plaintiff's maximum sustained work capability as sedentary.  R. at 364-365.  Moreover, Plaintiff contends that he "did not even have the capacity to perform sedentary work activity, 8 hours a day, 5 days a week."  DE 10 at 22.[5]

Interestingly, the ALJ's determination states that Dr. Gray opined that Plaintiff is limited to light work.  R. at 21.  However, the Court did not locate such a conclusion within Dr. Gray's physical RFC assessment (R. at 362-363).  Instead, the Court assumes the ALJ found Dr. Gray's opinions to be *consistent with* 20 C.F.R. § 404.1567(b).[6]  Thus, I agree with the Commissioner that Plaintiff is

---

[4] "To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567.

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 CFR § 404.1567(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of

actually challenging the ALJ's *interpretation* of Dr. Gray's opinion, rather than the *weight* assigned to it.  *See* DE 10 at 21-22, DE 13 at 8.

Nonetheless, as the Commissioner points out, the ALJ adopted the limitations of occasionally lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds (R. at 16), which is consistent with Dr. Gray's exertional limitations in those categories (R. at 362) and is also consistent with those categories in 20 C.F.R. § 404.1567(b)'s description of light work.  Moreover, the ALJ's RFC contains the limitation of a sit or stand at will option, which accommodates Dr. Gray's exertional limitations of standing and/or walking for a total of 4 hours and sitting for a total of approximately 6 hours in an 8-hour workday (R. at 362).  Thus, the inconsistency between the standing, walking and sitting provisions of a full-range of light work[7] and Dr. Gray's exertional limitations for standing, walking and sitting was cured by the addition of a sit or stand option *at any point throughout the workday*.

---

walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 CFR § 404.1567(b).

[7] "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."  SSR 83-10, 1983 WL 31251, 6 (1983).

### ii.      Dr. Cherwin (Plaintiff's Knee Surgeon)

Plaintiff contends that the ALJ gave "no weight" to the permanent

restrictions listed by Dr. Cherwin on November 15, 2006.  *See* DE 10 at 17-18, 21,

23; R. at 195.  Specifically, Dr. Cherwin remarked:  "no slopes, uneven ground, no

ladders, no shoveling, no kneeling, no side to side movements, no climbing more

than 4 stairs[.]"  R. at 195.

However, within the October 2011 Disability Determination Explanation,

"Assessment of Policy Issues," it appears that Dr. Gray considered the November

15, 2006 restrictions (R. at 195), noting that, "[t]his is mostly in line [with]

typical[] restrictions standardly advised." R. at 361-362.  Within the physical RFC

assessment portion of Dr. Gray's review, she additionally notes that, "Cane is not

medically necessary, but may be used prn [i.e., as necessary for] pain[,]" and

further that, "Even when considering all surgeries, there were no prolonged periods

of non-weight bearing." R. at 362-363.  All of this appears to have been considered

by the ALJ in his own RFC assessment. R. at 21 (citing Ex. 10F, pp. 7-9 [R. at

361-363]).

Moreover, with respect to the effects of postural-manipulative impairments

on the occupational base, the regulations provide, "[u]sual everyday activities, both

at home and at work, include ascending or descending ramps or a few stairs and

maintaining body equilibrium while doing so.  These activities are required more

17

in some jobs than in others, and they may be critical in some occupations.  Where a

person has some limitation in climbing and balancing and it is the only limitation,

it would not ordinarily have a significant impact on the broad world of work."

SSR 85-15, 1985 WL 56857, *6 (1985).  Plaintiff has not shown that the

limitations imposed by Dr. Cherwin on November 15, 2006 (R. at 195) were more

restrictive than the ALJ's RFC finding that Plaintiff could perform light work with

a "sit or stand option at any point throughout the workday" limitation (R. at 16).

### iii.    Lisa Jo Opperman (Plaintiff's Wife)

The ALJ assigned little weight to the statements of Lisa Joe Opperman,

Plaintiff's wife, found in the July 7, 2011 function report (R. at 104-111).  R. at 18-

19.  Among other things, Mrs. Opperman noted that Plaintiff "can only lift about

25-50" pounds and can walk approximately 50 yards.  R. at 109.  She also

indicated that Plaintiff uses a cane and a brace/splint.  R. at 110.

Plaintiff contends that the ALJ did not give proper weight to Mrs.

Opperman's report.  DE 10 at 31, 34.  However, the ALJ explained that he

assigned little weight to Mrs. Opperman's statements because she is not considered

a disinterested third party, and also because the statements were inconsistent with

the preponderance of the objective clinical and diagnostic medical evidence and

the record as a whole.  R. at 19.

18

"In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as *spouses*, parents, friends, and neighbors, it would be appropriate to consider such factors as the *nature and extent of the relationship*, whether the evidence is *consistent* with other evidence, and any other factors that tend to support or refute the evidence."  SSR 06-03p, 2006 WL 2329939, 6 (Aug. 9, 2006) (emphasis added).  Thus, the ALJ's evaluation of Mrs. Opperman's relationship with Plaintiff and the consistency of her statements with other evidence is permitted by SSR 06-03p.

### iv.    Michael G. Sperl, M.D.[8]

In support of his claim that he has reached maximum medical improvement, Plaintiff refers to the May 25, 2010 letter of Michael G. Sperl, M.D. (DE 10 at 16, 19, R. at 588-590).  Therein, Dr. Sperl stated:

> The patient has basically reached maximum medical improvement.  It is doubtful that any type of additional surgical intervention, injections, therapy and/or testing would be of significant clinical efficacy and, as such, there is little else to offer the patient other than conservative modalities entailing exercises as well as the continued utilization of a stabilizing knee brace.

R. at 590.  However, Dr. Sperl continued:

> From a functional/vocational standpoint, the patient again is limited.  I do not feel that he could perform his *unrestricted* employment duties. The patient again *requires restrictions* in terms of avoiding prolonged

---

[8] *See* DE 10-1 at 4-7 (Dr. Sperl's curriculum vitae).

periods of standing, walking, squatting, crawling, and/or climbing
activities given the residual symptoms and findings pertaining to the
right knee proper.

*Id*. (emphasis added).

Noticeably, Dr. Sperl does not state that Plaintiff cannot perform *any*

employment duties, nor would it be within his province to do so.  To the contrary,

the quoted material suggests that Plaintiff *can* work, albeit subject to restrictions.

As previously noted, the ALJ's RFC finding includes a sit or stand option *at any*

*point throughout the day*.  R. at 16.  Thus, the limitations contained in the RFC

appear to be appropriate.[9]

### b.    Credibility

Plaintiff argues that the ALJ "failed to properly assess the plaintiff's

pain, limitations and credibility."  DE 10 at 1 ¶ 2.  The United States Court of

Appeals for the Sixth Circuit provides the following with regard to credibility

assessments:

Where the symptoms and not the underlying condition form the basis
of the disability claim, a two-part analysis is used in evaluating
complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v.*

---

[9] Moreover, crawling and crouching would be rare occurrences in light work.  *See*
SSR 85-15, 1985 WL 56857, 7 ("crawling on hands and knees and feet is a
relatively rare activity even in arduous work, and limitations on the ability to crawl
would be of little significance in the broad world of work."), SSR 83-14, 1983 WL
31254, 2 (1983) ("to perform substantially all of the exertional requirements of
most sedentary and light jobs, a person would not need to crouch and would need
to stoop only occasionally (from very little up to one-third of the time, depending
on the particular job).").

> *Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d
> 1027, 1038–39 (6th Cir. 1994). First, the ALJ will ask whether there is
> an underlying medically determinable physical impairment that could
> reasonably be expected to produce the claimant's symptoms. 20
> C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment
> exists, then he must evaluate the intensity, persistence, and limiting
> effects of the symptoms on the individual's ability to do basic work
> activities. *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531.

The ALJ did not find Plaintiff fully credible. For example, the ALJ stated that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of [his] symptoms [were] less than fully credible." R. at 17. Referring to the July 7, 2011 function report completed by Plaintiff (R. at 120-127), the ALJ noted that "[d]espite his impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction." The ALJ further stated:

> The lack of more aggressive treatment, or additional surgical intervention or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as he alleged. The credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record.

R. at 18. In addition, the ALJ noted his observations of Plaintiff during the hearing:

> The claimant did not demonstrate or manifest any difficulty concentrating during the hearing. During the time when the claimant was being questioned, the claimant appeared to process the questions without difficulty, and to respond to the questions appropriately and without delay. The claimant paid attention throughout the hearing.

*Id.*

Here, the Court should conclude that the ALJ's assessment of Plaintiff's credibility was within his discretion and supported by substantial evidence. To begin, it was appropriate for the ALJ to comment upon his observations of Plaintiff during the hearing. As the Sixth Circuit has instructed, "[t]he ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.").

22

Moreover, there is evidence to support the ALJ's exertional findings that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds.  R. at 16.  To be sure, Plaintiff contends that the ALJ "incorrectly assumed that the plaintiff's ability to do some physical activity equated with an ability to maintain employment."  DE 10 at 26.  Plaintiff contends that "an individual's ability to do some activity does not diminish his credibility regarding pain and limitations."  DE 10 at 27.  However, Plaintiff's wife noted that Plaintiff can lift about 25-50 pounds, and Plaintiff himself noted that he "can lift about 50 [pounds] but can't walk with it very far . . . ."  *See* R. at 18, 109, 125.  It was certainly within the realm of reason for the ALJ to utilize and include this information in his RFC assessment and for him to conclude that it undermines Plaintiff's credibility.

Moreover, the ALJ acknowledged his compliance with SSR 96-7p.  R. at 16.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. The adjudicator must consider such factors as:  . . . The degree to which the individual's statements are *consistent* with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment."  SSR 96-7, 1996 WL 374186, *5 (July 2, 1996) (emphasis added).  A sampling of the record evidence shows:  physical therapy discharge

23

notes from April 20, 2006 do not indicate atrophy or spasticity (R. at 414-430, 421 (Ex. 11F)); notes from January 28, 2010 indicate "no evidence of erythema, edema," and "[n]o palpable defect in the tendon . . . ." (R. at 277 (Ex. 6F)); Plaintiff's admission that he can drive short distances, watches television, tries to take care of the house and swims (R. at 32, 48-49); a May 3, 2010 physical therapy discharge report by Sachin Desai, P.T., indicating "fair improvement," noting that Plaintiff "[r]eports 25% improvement overall[,]" and showing "progressive improvement in spinal flexibility and functional strength[,]" (R. at 326); and imaging from September 24, 2008, March 17, 2009 and June 24, 2009 showing no evidence of interval hardware complication (R. at 261-262, 266 (Ex. 4F)).

Given this "composite sketch" of the evidence, the ALJ's assessment of Plaintiff's credibility was well within the reasonable range of his discretion and is supported by substantial evidence, bearing in mind that this Court does "not…decide questions of credibility." *Bass,* 499 F.3d at 509.

### c.     Harmless error

Within his RFC finding, the ALJ stated, "The lack of more aggressive treatment, or additional surgical intervention or even a referral to a specialist suggests the claimant's symptoms and limitations were not as severe as he alleged." R. at 18.  The ALJ further stated, "The treatment records reveal the

claimant received routine, conservative, and non-emergency treatment since the alleged onset date." R. at 19.

Plaintiff takes issue with these statements, using words such as "not accurate," apparent "distortion," "exaggeration," and/or "mischaracterization." *See* DE 10 at 10-21. In conclusion, Plaintiff contends that "the ALJ erroneously found that the plaintiff was less than credible because of lack of objective findings, inconsistent statements, lack of more aggressive treatment, lack of referral to a specialist, and receipt of only routine, conservative and non-emergency treatment." DE 10 at 33. Notwithstanding Plaintiff's portrayal of the ALJ's opinion, Plaintiff did, in fact, testify that in terms of ongoing medical treatment, he is "just holding off until they find a different – maybe a different procedure they can do." R. at 38.

Even if I assume, for the sake of argument, that the ALJ's above characterization is an understatement of Plaintiff's treatment, the Court should agree with the Commissioner, who asserts that: "while the ALJ may have understated the extent of Plaintiff's treatment, any error is harmless[,] because . . . the ALJ gave great weight to the assessment of Dr. Gray, who specifically chronicled Plaintiff's three knee surgeries and other treatment, but nevertheless concluded that Plaintiff could perform a limited range of light work ([R. at 21, 363])." DE 13 at 18. As discussed above, the ALJ's RFC is consistent with Dr. Gray's physical RFC assessment (*see* R. at 362-363).

> ### 2.   Whether substantial evidence supports the ALJ's Step 5 finding?

"A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that *accurately* sets forth the plaintiff's physical and mental impairments."  *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added).  Plaintiff contends that the ALJ did not pose complete and accurate hypothetical questions to the VE.  DE 10 at 31-33.  Specifically, Plaintiff mentions the absence of Plaintiff's need for a cane or knee brace, as well as the permanent restrictions of no slopes, no uneven ground, no side to side movement and no climbing more than 4 stairs, as set forth by Dr. Cherwin on November 15, 2006.  DE 10 at 31, R. at 195.  The three jobs identified by the VE are addressed in turn.

> #### a.   Flagger

During the February 13, 2013 hearing, the ALJ and VE discussed the job of a "flagger," explained as a person who holds up a sign telling traffic to "stop" or "slow" at a construction site on a road.  The VE testified there were 68,740 such full time jobs nationally and 1,400 such full-time jobs statewide.  Although the ALJ questioned whether people are hired solely to be a flagger, the VE stated she knew employers "who hire flaggers specifically for flagging."  R. at 54.  The VE further testified that she has seen the job done with a sit/stand option, if the employer was willing.  R. at 55.

26

Plaintiff contends that the VE would have precluded the flagger job if the ALJ had included Plaintiff's need to use a cane and knee brace, as well as the permanent restrictions of no uneven ground or side to side movements.  DE 10 at 32-33.  Plaintiff takes the position that "[i]t is difficult to imagine a road construction site that has no uneven ground, no slopes and no side to side movement."  DE 10 at 33.  This is really a challenge to the ALJ's decision not to include these limitations in the RFC finding.

As for a cane, the ALJ cited Dr. Leung's March 25, 2010 notes, which indicate Plaintiff "does have a cane, but does not use it."  R. at 20, 270.  Moreover, as noted above, Dr. Gray's October 12, 2011 physical RFC assessment states that a "[c]ane is not medically necessary, but may be used [as needed for] pain."  R. at 362.  Thus, it was well within the ALJ's discretion not to expressly include this particular restriction.  Moreover, the sit/stand at will option, which was included in the hypothetical, accommodates for this.  Furthermore, Plaintiff has not shown that the restrictions regarding uneven ground or side-to-side movement or the need to wear a knee brace were more restrictive than the ALJ's RFC finding, which limited him to light jobs allowing him to sit or stand at will.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("There is also the

27

possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant.").

### b.   Router and Inspector

The ALJ's Step 5 determination also identified the occupations of router and inspector as existing jobs that Plaintiff is capable of performing. R. at 22-23. Plaintiff has failed to show this Court that any limitations would prevent him from performing these specific jobs. At the hearing, the VE described a "router" as a person marking packages for delivery, and testified this was light, unskilled work for which there were 53,126 full-time jobs nationally and 2,073 full-time jobs in the State of Michigan. R. at 55. Moreover, the VE described the "inspector" job as light, unskilled work for which there were 20,984 full-time jobs nationally and 974 full-time jobs in the State of Michigan. R. at 56.

Plaintiff's motion does not address the VE's testimony regarding the proposed jobs of "router" and "inspector." Nor does he challenge the ALJ's finding that these jobs "existed in significant numbers.[10] Accordingly, the Court

---

[10] The Sixth Circuit has acknowledged, "the difficult task of enumerating exactly what constitutes a 'significant number[,]'" noting that the Court "cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number of jobs." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).

should agree with the Commissioner that "even assuming, arguendo, that the flagger job could not be performed, the error would be harmless[,] because a significant number of jobs remain that Plaintiff could perform." DE 13 at 21 n.3.

### G. Conclusion

It is the claimant's burden to prove his RFC. *See* 20 C.F.R. § 416.912(a);[11] *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).[12] Plaintiff has not satisfied his burden to challenge the ALJ's RFC finding. Furthermore, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

---

[11] "In general, you have to prove to us that you are blind or disabled." 20 C.F.R. 416.912(a).

[12] "If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past." *Foster*, 279 F.3d at 354 (citing 20 C.F.R. § 404.1520(e)).

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: July 16, 2016                          s/Anthony P. Patti
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 16, 2015, electronically and/or by U.S. Mail.

<div style="margin-left: 40%;">
s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
</div>